**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| John L. Bowen, Jr., | Civil No. 13-3042 (DWF/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| City of St. Paul; St. Paul Police Officer Jason Bain, in his individual capacity; and St. Paul Police Officer Ann Baumgart, in her individual capacity, | |
| Defendants. | |

Andrew M. Irlbeck, Esq., and Paul Applebaum, Esq., Applebaum Law Firm, counsel for Plaintiff.

Lawrence J. Hayes, Jr., Assistant City Attorney, St. Paul City Attorney's Office, counsel for Defendants City of St. Paul, Jason Bain, and Ann Baumgart.

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment brought by Defendants Jason Bain ("Officer Bain"), Ann Baumgart ("Officer Baumgart") (together, the "Officers"), and the City of St. Paul (collectively, "Defendants"). (Doc. No. 33.) For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

Plaintiff John L. Bowen, Jr. ("Bowen" or "Plaintiff") is an adult resident of St. Paul, Minnesota. (Doc. No. 16, Second Am. Compl. ("SAC") ¶ 9.) Officer Bain has

worked as a St. Paul police officer since 2000 and has worked in law enforcement since 1995.  (Doc. No. 36 ("Hayes Aff.") ¶ 8, Ex. 6 ("Bain Dep.") at 7.)  Officer Baumgart has worked as a St. Paul police officer since 2001 and has been employed in law enforcement since 1999.  (Hayes Aff. ¶ 9, Ex. 7 ("Baumgart Dep.") at 7.)

On July 24, 2012, the Officers responded to an alert that had been placed on Plaintiff's vehicle when they spotted the suspected vehicle in the driveway of Plaintiff's residence.  (Hayes Aff. ¶ 6, Ex. 4 ("St. Paul Reports") at 48.)  The alert was placed by Ramsey County police, who believed the vehicle to be connected to a July 23, 2012 "strong arm" robbery.  (Hayes Aff. ¶ 3, Ex. 1 ("Ramsey County Reports") at 4-12.)  The Ramsey County Investigator overseeing the case, Investigator Dan Eggers ("Eggers"),[1] advised the officers to tow Plaintiff's vehicle and place him under arrest for aiding and abetting robbery.  (Hayes Aff. ¶ 4, Ex. 2 ("Eggers Report") at 2.)[2]

The Officers observed Plaintiff at his house and followed him across the street to a SuperAmerica convenience store, confirmed his identity, and placed him under arrest. (Bain Dep. at 11.)  Officer Bain then handcuffed Plaintiff's arms behind his back.  (*Id.*; Hayes Aff. ¶ 10, Ex. 8 ("Bowen Dep.") at 35.)  According to Officer Bain, the handcuffs were then "double-locked" so that they could not become any tighter or looser.  (Bain

---

[1]   Eggers was initially included as a Defendant in this action, but on October 31, 2014, was dismissed from this action with prejudice based on a stipulation of the parties. (Doc. No. 31.)

[2]   The parties' briefing included detailed background relating to the incident leading up to Plaintiff's arrest.  However, the Court omits those details in this Memorandum Opinion and Order as the parties now agree that Defendants "had arguable probable cause" at the time of arrest and Plaintiff has agreed to dismiss his False Arrest/Imprisonment claims.  (Doc. No. 38 at 1.)

Dep. at 12-14.) Before being led from the store, Plaintiff states that he complained to the officers that the handcuffs were too tight and were digging into his wrists. (Bowen Dep. at 43.)

The officers led Plaintiff out of the store and into their squad car. (Hayes Aff. ¶ 7, Ex. 5 ("Squad Video") at 10:52.) The squad car's video recorder documented Plaintiff's actions as he and the officers waited for approximately twenty minutes for a tow truck to arrive (the "Squad Video"). (Squad Video at 10:52-11:15.) As Officer Bain placed Plaintiff in the squad car, he advised Plaintiff to "sit in there sideways, please . . . sit in there sideways or you're not gonna fit unless you do and your hands are gonna hurt like a son-of-a-gun," to avoid pain from the handcuffs. (*Id.* at 10:51-52.) During this time, Plaintiff complained that he had been "searched and seized" illegally and that he had not been properly arrested. (*Id.*) When Plaintiff asked why he was under arrest, Officer Bain responded that Plaintiff was suspected for robbery. (*Id.* at 10:57.) Plaintiff also told the Officers he would sue them, and generally expressed strong dissatisfaction with the arrest. (*Id.* at 10:52-11:15.) Plaintiff asked the Officers to bring his daughter the Doritos he had purchased and the Officers agreed to do so. (*Id.* at 11:04-05.) After the tow truck loaded Plaintiff's vehicle, the squad car departed for Ramsey County Law Enforcement Center (the "RCLEC"). (*Id.* at 11:15.)

The ride to the station was approximately ten minutes long. (*Id.* at 11:16-11:26.) Approximately two minutes before arriving at the RCLEC, Plaintiff asked if he could receive medical attention at the station because his shoulder had "popped out of place." (*Id.* at 11:23.) Officer Bain responded that the station had a nurse that could attend to

3

him. (*Id*.)  Soon thereafter, the squad car recording shows Plaintiff audibly groaning and appearing to cry for approximately two minutes. (*Id*. at 11:23:30-11:25.)  Plaintiff stopped groaning and crying before the car arrived at the station. (*Id.* at 11:25.).

When the squad car arrived at the station, the Officers removed Plaintiff from the car and transferred him to the Ramsey county police. (Bain Dep. at 19.)  The video ends when Plaintiff is removed from the squad car. (Squad Video at 11:26.)  Plaintiff alleges that an officer struggled to remove the handcuffs and that afterwards his wrists were "kind of red." (Bowen Dep. at 29, 35-36.)  Plaintiff also states that he never received medical attention for his shoulder while at the station. (Bowen Dep. at 59.)

On July 25, 2012, Investigator Dan Eggers interviewed Plaintiff. (Eggers Report at 32.)  Plaintiff was released from custody later that day. (*Id*. at 34.)  No charges were filed against Bowen relating to the alleged robbery incident. (*Id.* at 41.)

Plaintiff claims that the handcuffs caused sharp pains in his wrists and aggravated a previous shoulder injury. (Doc. No. 39 ("Irlbeck Aff.") ¶ 5, Ex. 5 ("Bowen Interrogatories") at 55.)  He asserts that the pain in his wrists continued for several days after he was released from jail and that he still feels pain when he exercises. (*Id.*)  Additionally, Plaintiff states that his shoulder now bothers him if he attempts to lift something heavy and that it "pops" when he rotates it in the socket. (*Id.*)

Plaintiff asserts claims for excessive force against the City of Saint Paul and Officers Bain and Baumgart (Count II), and for battery against Officers Bain and

Baumgart (Count III) under 42 U.S.C. § 1983.  (SAC at ¶¶ 42-50.)[3]  Plaintiff requests relief in the form of:  (1) monetary judgment; (2) punitive damages; and (3) any other relief the court may deem appropriate.  (*Id.* at 11.)  Defendants move for summary judgment on all claims.  (Doc. Nos. 33 & 35.)

## DISCUSSION

### I.   Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir.1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment

---

[3]   Plaintiff has dismissed his false arrest (Count I) and false imprisonment (Count IV) claims.  (Doc. No. 38 at 1.)  Plaintiff also states that he "never alleged a *Monell* claim."  (*Id.*)

"may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Excessive Force

Plaintiff asserts a claim of excessive force against Officer Bain, Officer Baumgart, and the City of St. Paul. Plaintiff argues that a reasonable officer in a similar situation would not have used the degree of force employed by the Officers. Plaintiff specifically alleges that Bain and Baumgart improperly placed handcuffs on him in a way that injured his wrists and shoulder. The Officers argue that they are entitled to qualified immunity from Plaintiff's excessive force claim.

Qualified immunity shields state actors from civil liability so long as the actor's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense is interpreted broadly, and must allow leniency for mistakes made in good faith, so as to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). In order to overcome qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Fourth Amendment prohibits unreasonable seizures, which encompasses the use of excessive force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). When evaluating claims of excessive force in Fourth Amendment contexts, courts use an objective-reasonableness standard. *Id.* at 397. In determining whether an application of force was reasonable, a court must balance the nature of the intrusion of the individual's rights against the governmental interest at stake. *Id*. Reasonableness must be judged from the perspective of a reasonable officer at the time, not with the benefit of "the 20/20 vision of hindsight." *Id.* at 396. Ultimately, the question the Court must answer is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).

It is well accepted that police officers have the right to apply some degree of force during a lawful arrest. *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011); *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014); *Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009). As such, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (citation omitted). While the degree of injury is not dispositive, it can be relevant "insofar as it tends to show the amount and type of force used." *Chambers*, 641 F.3d at 906. Injuries beyond "irritation, minor injury, or discomfort" are indicative of excessive force for the application of handcuffs, as handcuffing is inevitably somewhat forceful. *Id*. at 907. However, it is possible for plaintiffs to "prove an

7

excessive use of *force* that caused only a minor *injury*." *Id.* at 906 (emphasis in original). And, although evidence of a *de minimus* injury does not necessarily foreclose a claim as a rule, cases where there is little evidence of identifiable injury can fail to support a claim. *See, e.g., Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (no medical records showing permanent injury defeats excessive force claim); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (allegations of pain with no medical evidence of long-term injury from handcuffs are insufficient to support claim of excessive force); *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (scrapes, bruises, and the less-than-permanent aggravation of a prior shoulder condition do not support a claim of excessive force).

Bowen contends that because the "nonmovant is to be believed" and "all justifiable inferences are to be drawn in his favor," he can sufficiently raise material factual questions regarding whether the force used through handcuffing was excessive. Specifically, Bowen points to his deposition and interrogatories, which he asserts show that his handcuffs were too tight. This includes Bowen's testimony that he: complained that the handcuffs were too tight immediately after they were put on; was in fact injured (i.e. his shoulder popped out), and complained about the handcuffs at the beginning and end of the video. (*See* Doc. No. 38 at 13.)

Here, however, even crediting Bowen's testimony and drawing all *reasonable* inferences in his favor, Bowen cannot show that a fact question exists with respect to the reasonableness of the force applied by the Officers because the Squad Video contradicts Bowen's testimony. *Enter. Bank*, 92 F.3d at 747 (emphasis added). Specifically, while

8

Plaintiff asserts that he alerted the Officers to his discomfort and repeatedly complained about the tightness of the handcuffs, the Court has the benefit of the Squad Video, which shows that during the first thirty-some minutes that Plaintiff was in the squad car, he did not mention the handcuffs or pain at all. (Squad Video at 10:52-11:26.) In fact, between 10:51 a.m., when Plaintiff is placed in the squad car, and 11:22 a.m., Plaintiff appears to only either sit calmly or threaten the Officers with a lawsuit. (Squad Video at 10:52-11:22.) During this time, Plaintiff makes no overt physical indication that he is experiencing any pain or discomfort. It is not reasonable to infer that a handcuffing that caused no pain for thirty-some minutes was improper handcuffing. This is consistent with the testimony of both Bain and Baumgart, who both stated that Plaintiff did not indicate that he was in pain until 11:23 a.m., when Plaintiff's shoulder suddenly "popped out" and he appears to experience pain. (*Id.* at 11:23; Bain Dep. at 19; Baumgart Dep. at 24.) Officer Bain even advised Plaintiff to "sit in there sideways" in the squad car to avoid being in pain. (Squad Video at 10:51-52.) Further, aside from the "popped out" shoulder, Bowen himself asserts only that the handcuffs made his wrists "kind of red." (Bowen Dep. at 29). Here, the fact that Plaintiff's shoulder ultimately popped out does not equate to unreasonable force. Put another way, handcuffing a party who is under arrest for suspected strong-armed robbery, placing him in a squad car handcuffed, and leaving him handcuffed while he indicates no discomfort or pain for approximately twenty minutes "was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." *Chambers*, 641 F.3d at 907 (citation omitted). In sum, because the Squad Video shows

9

that Plaintiff was not in pain for a long period of time after the application of the handcuffs, the handcuffing falls in line with those cases finding some degree of force consistent with proper handcuffing and "reasonable officers at the scene" would have had no reason to believe that the force used was unreasonable or excessive.[4] *Graham*, 490 U.S. at 396.

Additionally, although not dispositive of the issue, Defendant puts into evidence Plaintiff's medical records, which reflect that Plaintiff failed to seek medical attention for his injuries upon his release and only did so two years after the incident at issue in this case. (Bowen Dep. at 67; Hayes Aff. ¶10, Ex. 8 ("Bowen Dep. Exhibits") at 74.) Additionally, Plaintiff's rehabilitation center gave Plaintiff an excellent prognosis, and noted that his goals for the rehabilitation were met in a single visit. *Id.* at 76. The evidence presented indicates that Plaintiff's injuries fail to suggest that the force applied by the Officers was unreasonable or excessive. *See Chambers*, 641 F.3d at 906-07.

Consequently, the Court concludes that, viewing the totality of the evidence presented in the light most favorable to Plaintiff, no reasonable juror could conclude that the Defendants' use of force against Plaintiff was not objectively reasonable under the circumstances.[5] Instead, the force applied during Plaintiff's arrest was consistent with the force normally associated with the use of handcuffs, such that an objectively

---

[4] Further, the Court notes that Officer Bain offered medical treatment to Plaintiff upon his statement that he had "popped out" his shoulder. (Squad Video at 11:23-11:25).

[5] Any sort of failure to intervene claim specific to Baumgart also fails because the Court determined above that there no was underlying unlawful use of force.

reasonable officer at the time would find it appropriate. *See Chambers*, 641 F.3d at 907.[6]

Thus, the Officers' handcuffing of Plaintiff does not amount to a violation of the Fourth Amendment. As a result, the Officers are entitled to qualified immunity from Plaintiff's excessive force claim and summary judgment is properly granted. The City of Saint Paul is also properly dismissed as a result.[7]

### III. Battery

Plaintiff also asserts a claim for battery against the Officers. Battery is "intentional, unpermitted offensive conduct with another." *Johnson v. Morris*, 453 N.W.2d 31, 40 (Minn.1990). Defendants contend that the doctrine of official immunity protects them from liability.

Official immunity shields public officials from state law claims when their duties require the exercise of discretion, so long as the official has not committed a willful or malicious wrong. *Id.* at 41-42. Police officers are typically qualified as discretionary officials for the operational decisions made during arrests. *See, e.g., Id.* at 42; *Pletan v.*

---

[6] Even if the use of force was not objectively reasonable, the constitutional right involved must be clearly established to overcome the Officers' qualified immunity. For a constitutional right to be clearly established, it must be well recognized such that "a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Here, sufficient legal precedent supports the Officers' use of force through handcuffing. Therefore, there is no "clearly established" right that would support Plaintiff's claims.

[7] Regarding Plaintiff's excessive force claim against the City of St. Paul, Plaintiff admits that he has not alleged a *Monell* claim. (Doc. No. 38 at 1.) A municipal liability cannot be held liable under § 1983 without a finding that an employee is liable on an underlying constitutional claim or without establishing that a municipal policy or custom is the moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs. City of New York*, 436 U.S. 658, 691 (1978).

*Gaines,* 494 N.W.2d 38, 41 (Minn.1992). To overcome official immunity, Plaintiff must show that the officers acted willfully or maliciously. *See, e.g.*, *Mumm v. Mornson,* 708 N.W.2d 475, 490 (Minn.2006). In the context of official immunity, "malice means . . . the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991).

As discussed above, with respect to Plaintiff's excessive force claim, viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could conclude that the manner in which Plaintiff was arrested amounted to a violation of his rights. Without having engaged in a wrongful act, the officers cannot have acted willfully or maliciously. Thus, the officers are entitled to official immunity. Accordingly, summary judgment is properly granted as to Plaintiff's battery claim.

## CONCLUSION

Plaintiff cannot establish a genuine issue of material fact sufficient to overcome qualified immunity with respect to his excessive force claim or official immunity with respect to his battery claim. Thus, Plaintiff's claims are properly dismissed.

## ORDER

Accordingly, based on the foregoing, and on the files, records, and proceedings, herein, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1.   Defendants City of St. Paul, Jason Bain, and Ann Baumgart's Motion for Summary Judgment (Doc. No. [33]) is **GRANTED**.

    2.       This action is **DISMISSED WITH PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 7, 2015            s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge